MEMORANDUM *
A.C. Newland appeals from the magistrate judge’s decision granting a 28 U.S.C. § 2254 habeas corpus petition filed by Crossan D. Hoover, Jr., a California state prisoner. See Hoover v. Carey, 508 F.Supp.2d 775 (N.D.Cal.2007). We have jurisdiction under 28 U.S.C. §§ 686(c)(3), 1291, and 2253. We review de novo the magistrate judge’s decision to grant Hoover’s petition. See Bean v. Calderon, 163 F.3d 1073, 1077 (9th Cir.1998). We reverse.
A. Insanity Jimj Instruction
The insanity jury instruction given by the state trial court was erroneous under state law. See People v. Hoover, 187 Cal.App.3d 1074, 231 Cal.Rptr. 203, 206 (Cal.Ct.App.1986). Habeas relief is not, however, available on the basis of this instructional error unless the error prejudiced Hoover. See Calderon v. Coleman, 525 U.S. 141, 145-47, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998).
The California Court of Appeal held that the instructional error did not prejudice Hoover. See Hoover, 231 Cal.Rptr. at 206-08, 211. We defer to that holding because it is neither contrary to clearly established U.S. Supreme Court precedent nor objectively unreasonable. See Mitchell v. Esparza, 540 U.S. 12, 17-18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); Inthavong v. Lamarque, 420 F.3d 1055, 1058-59 (9th Cir.2005).
The California Court of Appeal determined that the “nature and quality” prong of the insanity instruction subsumed the “right and wrong” prong, and that the error in the instruction was harmless unless it was reasonably probable that the jury found Hoover was incapable of distinguishing right from wrong at the time of the killing. See Hoover, 231 Cal.Rptr. at 206. This determination is consistent with the U.S. Supreme Court’s decision in Clark v. Arizona, 548 U.S. 735, 748-53, 126 S.Ct. 2709, 165 L.Ed.2d 842 (2006), in which the Court upheld against constitutional challenge an insanity instruction that required a determination that the defendant understood what he was doing was wrong, but did not require a separate de *58 termination that the defendant understood the nature and quality of his acts.
The California Court of Appeal determined that the erroneous instruction did not prejudice Hoover. See Hoover, 231 Cal.Rptr. at 206, 208. This determination was not objectively unreasonable. Statements made by Hoover subsequent to the killing indicate that he was capable of distinguishing right from wrong at the time of the killing. And, at best, the testimony of defense expert Dr. Rodriguez was equivocal on whether Hoover was capable of distinguishing right from wrong at the time of the killing.
Because the California Court of Appeal’s determination that the instructional error did not prejudice Hoover was neither contrary to clearly established U.S. Supreme Court authority nor objectively unreasonable, the instructional error does not provide a basis for granting habeas relief. See Mitchell, 540 U.S. at 17-18, 124 S.Ct. 7; Calderon, 525 U.S. at 145-47, 119 S.Ct. 500; Inthavong, 420 F.3d at 1058-59.
B. Napue Claim
Hoover failed to demonstrate that the testimony of Dr. Buehler was “false” and therefore failed to meet his burden of demonstrating that the state violated his due process rights under Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). See Morris v. Ylst, 447 F.3d 735, 743 (9th Cir.2006).
First, although Hoover claims that Dr. Buehler’s testimony was “tainted by the prosecutor’s manipulation of the evidence,” he has provided no evidence that Dr. Buehler would have testified differently if presented with the additional evidence Hoover claims the state should have provided.
Second, Dr. Buehler was provided with extensive background information to assist him in evaluating Hoover. In fact, it appears that none of the other experts, except perhaps Drs. Rodriguez and Gutstadt, received as much information as Dr. Buehler. Further, because Dr. Buehler was a court-appointed expert, both the prosecution and the defense were free to provide Dr. Buehler with information deemed material to the evaluation of Hoover. Dr. Buehler did not indicate, and Hoover does not claim, that Dr. Buehler sought additional information that he was unable to obtain.
Finally, even assuming Dr. Buehler’s testimony and opinions differed from the testimony and opinions offered by all of the other experts, this difference does not render his testimony “false.” See United States v. Workinger, 90 F.3d 1409, 1416 (9th Cir.1996) (holding that disagreement between experts did not transform an expert’s testimony into a falsehood); Harris v. Vasquez, 949 F.2d 1497, 1524 (9th Cir.1991) (“Moreover, these conflicting psychiatric opinions do not show that Dr. Gris-wold’s testimony was false; ‘psychiatrists disagree widely and frequently.’ ”); cf. Sistrunk v. Armenakis, 292 F.3d 669, 675 & n. 7 (9th Cir.2002) (en banc) (holding that although doctor’s testimony was clearly inaccurate, it was not “false” or a “lie”).
REVERSED and REMANDED with instructions to enter judgment in favor of the Respondent.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.